## MARLEY *v.* FOSTER.

### (*Jackson.* April 12, 1899.)

1. TITLE TO LAND. *Not proved, when.*

   The complainant fails to show title to land that supports a bill to remove a cloud and recover for timber taken therefrom, by proof of a tax sale that would have given his ancestor a superior title but for the fact that it was never perfected by deed, and by proof of a subsequent deed from the original owner to his ancestor, made upon conditions never complied with and withholden from registration for over twenty years, neither the complainant nor his ancestor ever having been in possession of the land or paid taxes thereon. (*Post, pp. 242–244.*)

2. TAX TITLE. *Invalid, when.*

   A tax deed is insufficient to support ejectment where it does not recite that the land was "duly reported" as required by the statute under which the tax sale was made. (*Post, pp. 246, 247.*)

   Act construed: Acts 1844, Ch. 92.

   Case cited and approved: Hightower *v.* Freedle, 5 Sneed, 312.

---

FROM LAUDERDALE.

---

Appeal from Chancery Court of Lauderdale County. JNO. S. COOPER, Ch.

C. P. McKINNEY for Marley.

C. B. SIMONTON, THOS. STEELE, and W. G. LYNN for Foster.

18 P—16

McFARLAND, Sp. J.    The original bill in this
case was filed by Jo. C. Marley against W. H.
Foster and wife, to enjoin a suit then pending in
the Circuit Court of Lauderdale County, of Foster
and wife for $57.19 against complainant, this being
Mrs. Foster's share of proceeds of some timber sold
by Marley from a tract of land known as the
Blackwell land, owned jointly by Marley and Mrs.
Foster.    The ground of this application for an in-
junction was that he, Marley, and Mrs. Foster owned
jointly another tract of land of some 416 acres, also
in Tipton County, Tennessee, known as the Ammon
land; that Mrs. Foster owed him, Marley, an amount
greater than this $57.19 judgment—his share of tim-
ber sold by her from the Ammon tract.    Her bill
also sought to cancel, as a cloud upon his title to
a half interest in this Ammon tract, a certain grant
which was given by the State to Mrs. Foster, on
March 6, 1895, to 1,175 acres, covering this Am-
mon tract in so far as this grant affected this tract,
and also to have the land partitioned.

Foster and wife filed separate answers and cross
bill.    Mrs. Foster's answer denies that Marley had
any interest in the Ammon tract, alleges she owns
the entire interest in the tract, and her cross bill
seeks an accounting with Marley for timber he had
sold from this land.    Foster, the husband, answers,
saying that the Ammon tract is the separate estate
of his wife, and he leaves the litigation as to this
land between complainant and his (Foster's) wife.

Marley v. Foster.

Foster's cross bill, however, set up that Marley has cut timber from two other and different tracts owned by him, Foster, and seeks an accounting for this timber.

By agreement of counsel, the Circuit Court suit was transferred to this Court for determination, and thus, by this bill and these cross bills, all these separate and diverse matters are combined into one suit. Many entries and grants and plats and deeds are filed, and much proof taken, all dumped, as it were, in this record, and the Court is asked to settle, as best it can, these separate and conflicting claims.

The Chancellor denied the relief prayed for in the original bill, except to cancel the grant for the 1,175 acres as to a tract known as the Ball tract, and decrees in favor of Mrs. Foster as to the Ammons tract, also as to the suit for $57.19, and in favor of Foster, the husband, for an accounting by Marley for timber sold from the other two tracts owned by Foster. The complainant appeals and assigns errors.

Notwithstanding the number of grants and deeds and volume of proof, the titles to all the lands in controversy are very unsatisfactorily deraigned, and the facts are not very clearly proven. The main issue raised by the pleadings was as to the ownership of the Ammon tract of 416 acres, in which Marley claimed half interest. This tract is overflowed land in Mississippi bottom, and valuable prin-

cipally for its timber. It was granted by the State of Tennessee to Peter Ammon in year 1837. In 1845 it was sold for taxes of 1844, and bought by L. S. Maclin, the father of Mrs. Foster. In 1846 it was again sold for taxes, and bought by D. M. Henning. A stipulation in the record concedes the regularity of the proceedings in both these tax sales. Maclin, the purchaser in the first sale, did not take tax deed from the Sheriff until 1854, when he took deed from the successor of the Sheriff who sold. This Sheriff's deed was registered in 1854, soon after it was executed.

It does not appear that any tax deed was ever taken by Henning. However, on the fourteenth day of April, 1854, Peter Ammon, the original owner, conveyed to Henning an undivided interest in this tract, the deed reciting that it was for the consideration of his tax right to this tract of land, and in consideration of his, Henning, paying all the costs that had accrued legally on this tract of land up to this date. This deed was not recorded until November 9, 1875, more than twenty-one years after its execution, and Henning seems not to have complied with conditions of deed to same, or to have paid any taxes, or to have exercised any act of ownership over same until, on November 20, 1875, he quitclaims this half interest to Marley, and from this time, up to filing his bill in 1897, Marley seems to have claimed to have owned this one-half interest,

and sold some timber from it, but does not appear to have paid any taxes on it.

As to Maclin, it appears further that in April, 1887, he took quitclaim deed from a Mrs. Seay, a daughter of Peter Ammons, for an undivided half interest in this tract. This transaction, however, is sought to be explained by Foster, who knew the circumstances of this conveyance, and who says Mrs. Seay was one of two children left by Ammons, and that this explains why she conveyed only a half interest. He says, further, that she was a handsome widow; that Maclin was a gallant old gentleman somewhat smitten with the widow's charms, and he paid her the fifty dollars for this land as a means of making an inoffensive contribution to the widow, who, it appears, was then needing assistance.

These are the many facts as to the title and ownership of this Ammons tract, and the question is whether Marley owns a half interest, or whether Mrs. Foster, the only heir of Maclin, owns and is entitled to recover this whole tract; or whether either have shown sufficient for recovery in ejectment. As to Marley, it seems clear he had no such title to the half interest claimed by him as entitles him to recover in this cause. It is true the tax sale to Henning in 1846, if regular, gave a superior title— being for subsequent taxes—to tax sale of 1845 to Maclin. But it has been shown Henning never perfected his title by deed. It is true that in 1854 Ammons quitclaims to Henning a half interest, but

this deed was upon conditions which it is not shown were ever complied with by Henning, though this is not very material. He did not even record his deed for over twenty-one years—in November, 1875, just before he sold to Marley. He paid no taxes for all these years nor exercised any acts of ownership. He knew all that time that Maclin claimed title to the land, that he was claiming all of it. He was paying taxes on it, and Marley also knew the plain facts as to title and claim of ownership. He did not testify in his own behalf in this cause.

As to the title of Maclin, it is contended by Marley that his, Maclin's, tax deed, procured from Sheriff in 1854 on the tax sale of 1845, was void, because it did not recite that said land was "duly reported." Citing *Hightower* v. *Friedle*, 5 Sneed, 312.

This case of *Hightower* v. *Freedle* holds that under the Act of 1844, Ch. 92, it must appear in the proceedings of condemnation and sale of land for unpaid taxes, "that the land so sold lies in the county in which it has been reported for nonpayment of the taxes thereon, and that it has been duly reported," etc., and that these recitals must appear in the Sheriff's deed, executed upon proceedings of condemnation and sale. This fact not appearing in this Sheriff's deed, upon which cross complainant, Mrs. Foster, relies to maintain this action of ejectment, she must fail upon this point. Neither is it shown in this record that Mrs. Foster or her father (Maclin) have had such adverse possession by actual occu-

Marley *v.* Foster.

pancy of any portion of this land claimed under this Sheriff's deed, as color of title, as will entitle her to recover in this ejectment suit. The result of these conclusions is that complainant, J. C. Marley, is entitled to no relief as to this 416 acres, the Ammons tract, and that Mrs. Lula Foster is entitled to no relief as to this Ammons tract on her cross bill, neither party having shown clear legal title, and both the original bill of Marley and the cross bill of Mrs. Foster, as to this 416 acre Ammons tract, must be dismissed, but without prejudice to either party. With these modifications the decree of the Chancellor · is affirmed and the cause is remanded to the Chancery Court for the taking of the accounts ordered in the decree below upon the matters of said decree herein affirmed.

The costs of the Court below, and· of this Court to this date, will be paid one-half each by complainant and defendants.